# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RICHARD SCOTT STERMER,           )
                                 )
      Plaintiff,            )
                                 )  No. 12 CV 10033
v.                               )
                                 )  Hon. Charles R. Norgle
CATERPILLAR INC.,                )
                                 )
      Defendant.            )

## OPINION AND ORDER

Plaintiff Richard Scott Stermer ("Plaintiff") sues Defendant Caterpillar Inc. ("Defendant") for discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Before the Court is Defendant's Motion for Summary Judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

In May of 2011, Plaintiff applied for a welding position with Defendant. After interviewing Plaintiff, Defendant offered him the job on July 12, 2011, with a projected start date of July 25, 2011. Prior to starting work, Plaintiff had to complete a "Post-Offer Questionnaire" and medical exam. On the medical questionnaire, Plaintiff reported that he was currently being treated for ADHD (attention deficit hyperactivity disorder), anxiety, and depression, and that he was taking the following medications: Adderall, Venlafaxine, Propranolol, Xanax, and Seroquel. Plaintiff also marked "yes" when asked whether he had ever had depression, panic attacks, anxiety, fear of heights, or confined spaces.

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts within the text.

When Plaintiff returned the completed questionnaire to a nurse for Defendant, he also presented a doctor's note dated July 20, 2009 from his psychiatrist, Dr. Kohn, stating that "[Plaintiff] has been under my care since March of 2001. He is currently taking the following medications: Adderall, Propranolol, Seroquel, Venlafaxine, and Xanax." Def.'s Rule 56.1(A) Statement of Material Undisputed Facts ¶ 7. After presenting the doctor's note, Plaintiff met with a counselor for Defendant. During this meeting, Plaintiff informed the counselor that he had run out of some of his prescribed medications because he had lost his health insurance. The counselor asked Plaintiff about the two-year old note. Defendant alleges that Plaintiff became aggressive and inappropriate when questioned about the note. Plaintiff denies that he acted inappropriately.

Next, Plaintiff met with Dr. Matthew Thomas Neu ("Dr. Neu"), Defendant's Regional Managing Director. Plaintiff told Dr. Neu that he hoped that no one would notice the date on his doctor's note. Plaintiff stated at his deposition that he was frustrated by being asked the same questions and that he was merely joking. Plaintiff also told Dr. Neu that he had not seen his psychiatrist, Dr. Kohn, since January of 2011, and that he had cancelled his most recent appointment in July of 2011. Dr. Neu stated that he thought that Plaintiff was acting overly aggressive in trying to reach a resolution of the matter. Ultimately, Dr. Neu was concerned that Plaintiff was only taking certain medication intermittently, and told Plaintiff that he needed more information from his psychiatrist before he cleared him for work. Plaintiff's start date was delayed accordingly.

On July 19, 2011, Dr. Neu sent Plaintiff a letter requesting additional information and a letter from his psychiatrist. The letter stated:

> After review of your pre-placement medical examination, I note you have a medical related problem that may impact your ability to safely perform the

> essential functions of the open position. Caterpillar is very interested in trying to be certain that your new position will not cause you any harm and that you are able to perform it without risk to yourself.
> We noted on your history and physical exam that you have a history of depression, anxiety, and attention deficit disorder and that you have taken Venlafaxine, Seroquel, Xanax, Propranolol, and Adderall. You indicated that these problems are still active and you are intermittently taking Adderall and Venlafaxine. Please contact Dr. Kohn, your psychiatrist, and ask that a letter detailing your current active treatment, frequency of treatment, current medications, when you have eventually attained a stable psychiatric status, and Dr. Kohn's opinion on your fitness for work.

Id. ¶ 12. Dr. Kohn responded to Dr. Neu by letter. Dr. Neu reviewed the letter on August 1, 2011 and felt that there was a mismatch between the letter and what Plaintiff had previously reported to him. Dr. Neu called Dr. Kohn on August 1, 2011 to discuss the matter. Dr. Kohn indicated that he would return Dr. Neu's call in approximately one month. Dr. Kohn called Dr. Neu in mid-September of 2011, and Dr. Neu returned his call on September 20, 2011, but he was unable to reach Dr. Kohn.

In the interim, on October 12, 2011, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against Defendant, alleging that it was discriminating against him on the basis of disability by delaying his start date. Finally, on October 31, 2011, Dr. Neu called Dr. Kohn, at which time Dr. Kohn reported that Plaintiff was stable and able to return to work. On November 1, 2011, Dr. Kohn sent Dr. Neu a follow-up letter, which stated:

> Mr. Stermer was seen for a follow-up visit in the past four weeks. He has stabilized with regard to his underlying anxiety and impulsive behavior. As you and I discussed, his behavior at his first interview was inappropriate with a decreased regard for social expectations regarding patience and impulsivity. I reviewed this with him and modified his medications. Currently, he is prescribed and takes the following meds:
> 1. Adderall 30 mg up to 3 tabs daily
> 2. Propranolol 20 mg bid
> 2. [sic] Alprazolam 1 mg up to twice daily or as needed for anxiety.
> His social anxiety and panic disorder seems to be better controlled with this combination. He has an essential tremor and ADHD. The stimulant increases his

tremor. He was emotionally stable at his last visit and in my opinion is ready for a job interview with your company.

Pl.'s Resp. to Def.'s Rule 56.1(A) Statement of Material Undisputed Facts ¶ 17. Subsequently, on November 4, 2011, Dr. Neu contacted Plaintiff and informed him that he was cleared to work.

Plaintiff began working for Defendant on November 14, 2011. Upon starting his employment, Plaintiff received weld training that lasted a series of weeks. Once his training was complete, Plaintiff was sent to the production floor. Although initially placed on the "hex line," Plaintiff was reassigned to the "boom and stick line" where he received on-the-job training from an assigned trainer, Skyler Williams ("Williams"). While on the production floor, Plaintiff struggled with a certain type of weld known as "stack passes." Plaintiff's trainer notified Brandon Krueger ("Krueger"), Plaintiff's supervisor, that Plaintiff was struggling with the welds. Inspectors in that area also informed Krueger that they had found defects in Plaintiff's welds. As a result, Plaintiff was sent back to training for approximately one week.

Once Plaintiff completed his second round of training, he was sent back to the production line and assigned to another individual trainer, Roy Storey ("Storey"). Storey informed Krueger that he had to fix some of Plaintiff's welds. Indeed, Plaintiff admits that Storey had to fix his welds. Plaintiff also admits that he had problems welding when he returned to the production floor, and that his welds "didn't really look nice." Id. ¶ 24.

On February 2, 2012, Plaintiff was "separated" from his employment with Defendant upon the recommendation of Krueger. Pl.'s Rule 56.1(b)(3)(C) Statement of Additional Facts ¶ 27. The Court construes Plaintiff's "separation date" as the date of his termination. Defendant stated that Plaintiff's termination was due to unsatisfactory performance—specifically, that Plaintiff could not successfully complete the required welds for the job. Plaintiff denies that he was terminated due to unsatisfactory performance, and, instead, he contends that his termination

4

was based on disability discrimination and retaliation in violation of the ADA. Because Plaintiff, a union member, had worked for Defendant for less than ninety days (November 14, 2011 to February 2, 2012), he was considered a probationary employee at the time of his separation with Defendant, and thus he was not entitled to progressive discipline or just cause under the collective bargaining agreement. See Pl.'s Rule 56.1(b)(3)(C) Statement of Additional Facts Ex. F ("Employees shall be regarded as probationary during the first ninety days of work by such employee. No claim of wrongful layoff or discharge of a probationary employee shall be taken up as a grievance, unless such claim is based on alleged personal prejudice or Union activity during such ninety days worked."). Plaintiff denies that he was not entitled to progressive discipline, however, the collective bargaining agreement speaks for itself, and Plaintiff has not presented any evidence to the contrary.

It is undisputed that Dr. Neu did not play a role in the decision to separate Plaintiff from his employment with Defendant, and that Dr. Neu had no knowledge of Plaintiff's termination. In addition, Plaintiff testified at his deposition that he did not know whether Krueger was aware that he had filed an EEOC charge, and Krueger testified that he was not aware of the charge when he decided to end Plaintiff's employment.

With respect to Plaintiff's alleged disabilities, he claims to suffer from ADHD, depression, and anxiety. On October 3, 2011, Plaintiff completed an EEOC questionnaire stating that his ADHD, depression, and anxiety "don't prevent me from [or] limit me from doing anything." Pl.'s Resp. to Def.'s Rule 56.1(A) Statement of Material Undisputed Facts ¶ 28. At Plaintiff's deposition, he testified that his alleged disabilities did not prevent him from caring for himself, performing manual tasks, and that the physical manifestations of his alleged disabilities did not inhibit him in any way from walking, standing, lifting, or bending. Although Plaintiff

testified that an anxiety attack could affect his breathing, he admitted that he had not had an anxiety attack since 2001. Additionally, Plaintiff testified generally that he has problems concentrating and learning, and that he occasionally has trouble sleeping which he attributes to his anxiety. He admitted however, that his psychiatrist never told him that his sleep problems were related to his anxiety. Furthermore, Plaintiff testified that his conditions did not inhibit or prevent him from working in any way while he was employed by Defendant. While employed by Defendant, Plaintiff had a full work release without medical restrictions, he never requested or informed Defendant that he needed an accommodation, and he never went to the medical department to see a counselor or Dr. Neu.

On December 17, 2012, Plaintiff initiated the instant action. Plaintiff argues that Defendant, through Dr. Neu and his nurses, discriminated against him on the basis of his disability by delaying his start date. Plaintiff also argues that Defendant, through his supervisor, Krueger, terminated his employment in retaliation for filing an EEOC charge of discrimination. Defendant's motion for summary judgment is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Matz v. Klotka, 769 F.3d 517, 522 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party.

Id. But before the nonmoving party "can benefit from a favorable view of evidence, [he] must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013) (quoting Celotex Corp., 477 U.S. at 322).

**B. Discrimination**

First, Plaintiff argues that Defendant discriminated against him on the basis of his alleged disability or disabilities in violation of the ADA. "The ADA proscribes discrimination against a qualified individual with a disability 'because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Hoffman v. Caterpillar, Inc., 256 F.3d 568, 571-72 (7th Cir. 2001) (quoting 42 U.S.C. § 12112(a)).

*1. Direct Method*

"A disabled plaintiff can prove disability discrimination by using either the direct or indirect method of proof." Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522, 657 F.3d 595, 601 (7th Cir. 2011). "Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden." Id. "Direct evidence requires an admission by the

decision maker that his or her actions were based upon the prohibited animus." Id. "The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." Id.

Using the direct method of proof, "[d]epending on the issues raised by a summary judgment motion, an ADA plaintiff must identify a genuine issue of material fact as to whether (1) [he] is disabled; (2) [he] is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) [he] suffered an adverse employment action because of [his] disability." Majors, 714 F.3d at 533 (citing Povey v. City of Jeffersonville, 697 F.3d 619, 622 (7th Cir. 2012)); see also Bunn v. Khoury Enters., 753 F.3d 676, 682 (7th Cir. 2014). "As a threshold requirement, [Plaintiff] must first establish that [he] has a disability as defined by the ADA." Hoffman, 256 F.3d at 572.

"A disability is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having an impairment." Dickerson, 657 F.3d at 600 (citing 42 U.S.C. § 12102(1)). Plaintiff argues that he is disabled under all three definitions based on his ADHD, depression, and anxiety. The Court notes that "many impairments that are considered 'disabilities' under the term's colloquial meaning are not 'disabilities' for the purposes of the ADA . . . ." Steffen v. Donahoe, 680 F.3d 738, 747 (7th Cir. 2012).

As to the first definition of disability, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

8

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Plaintiff argues that his ADHD, depression, and anxiety affect his ability to concentrate and learn new information in that he has to ask people to repeat information, and that sometimes he has trouble falling asleep which he attributes to his anxiety. However, Plaintiff admitted that his doctor has never told him that his sleep troubles are related to his anxiety. Furthermore, although Plaintiff mentions generally that he has problems concentrating and learning, he admitted in the EEOC intake questionnaire, at his deposition, and in response to Defendant's statement of facts that his ADHD, anxiety, and depression did not prevent or limit his ability to work for Defendant in any way. Viewing the undisputed facts in a light most favorable to Plaintiff, Plaintiff failed to show that he had a physical or mental impairment that substantially limited one or more of his major life activities.

Second, Plaintiff argues that he is disabled under the ADA because he has a long record of his alleged impairment. Plaintiff has been diagnosed with, and receiving treatment for, ADHD, depression, and anxiety since 2001. In order to be considered a record of an impairment, however, the record must show that his problems substantially limit a major life activity or activities. See Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 509 (7th Cir. 1998) (stating that the ADA extends coverage "to persons who have a history of, or have been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities" (internal quotation marks and citation omitted)). The only record of his problems that Plaintiff provides is information and notes from his treating psychiatrist, Dr. Kohn. But Dr. Kohn does not provide any information with respect to any substantial limitations Plaintiff might have—indeed, the evidence is quite the opposite. Dr. Kohn merely lists Plaintiff's diagnoses and

9

medications, and concludes that he is ready and able to begin work. Accordingly, Plaintiff fails to show that he is disabled based on a record of his alleged impairments.

Third, Plaintiff argues that Defendant regarded him as disabled. "Under the 'regarded as' prong, the employer must believe, rightly or wrongly, that the employee has an impairment that substantially limits one or more major life activities." Powers v. USF Holland, Inc., 667 F.3d 815, 823 (7th Cir. 2011) (citing Kupstas v. City of Greenwood, 398 F.3d 609, 612 (7th Cir. 2005)). "Under the 'regarded as' theory of disability, then, [Plaintiff] must show that [Defendant] believed he was substantially limited in his ability to perform the major life activity of working." Id. "And to be regarded as substantially limited in the ability to work, [Plaintiff] needed to present some evidence that [Defendant] 'regarded him as limited in his ability to perform not merely one particular job but a class or broad range of jobs.'" Id. (quoting Miller v. Ill. Dept. of Transp., 643 F.3d 190, 195 (7th Cir. 2011)). Here, Plaintiff relies entirely on the fact that Defendant delayed his employment while confirming his medical records to show that Defendant regarded him as disabled. Defendant argues that it never regarded Plaintiff as disabled, and that the entire purpose of delaying Plaintiff's start date was to confirm that Plaintiff did not have a disability or any substantial limitations. Once Plaintiff's physician, Dr. Kohn, cleared him for work, Defendant gave Plaintiff a start date and approved him for work without restriction or accommodation. During Plaintiff's employment he never requested or needed a restriction or accommodation. The undisputed facts fail to establish that Defendant regarded Plaintiff as having any substantial limitations in major life functions or in his ability to work. Therefore, Plaintiff was not regarded as disabled. Because Plaintiff fails to establish that he was a disabled individual as defined by the ADA, his discrimination claim fails.

Even if Plaintiff could show that he was a disabled individual under the ADA, he fails to meet his burden under the direct method of proof to show by direct or circumstantial evidence that he suffered an adverse employment action because of his disability, which he would be required to prove at trial. See Bunn, 753 F.3d at 683. Thus, Plaintiff's discrimination claim fails under the direct method of proof.

## 2. *Indirect Method*

"Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." Dickerson, 657 F.3d at 601 (citations omitted). "Once a plaintiff has established a *prima facie* case, the defendant must identify a legitimate, non-discriminatory reason for its employment decision." Id. "If the defendant satisfies this requirement, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual." Id.

As discussed above, Plaintiff fails to establish that he was a disabled individual as defined by the ADA. Plaintiff's claim, therefore, fails under the indirect method of proof. In any event, even if Plaintiff could show that he was a disabled individual, he fails to present any evidence that he was meeting Defendant's legitimate employment expectations. The undisputed facts show that Plaintiff could not execute the required welds. Because Plaintiff fails to show that he was a disabled individual under the ADA, and that he was meeting Defendant's legitimate employment expectations, his discrimination claim fails, and the Court need not address the parties' remaining arguments. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's disability discrimination claim.

## C. Retaliation

Next, Plaintiff argues that Defendant retaliated against him for filing an EEOC complaint. Specifically, Plaintiff argues that Defendant terminated his employment on February 2, 2012, because he had filed an EEOC complaint on October 12, 2011, complaining about his delayed start date. Although retaliation under the ADA can be established through either the direct or indirect methods of proof, Plaintiff only argues under the direct method.

"To establish a case of retaliation under the direct method of proof, a plaintiff must show (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two." Dickerson, 657 F.3d at 601. As discussed above, a Plaintiff can use either direct or circumstantial evidence to meet his burden under the direct method. "[C]ircumstantial evidence of retaliation may include suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Harper v. C.R. Eng., Inc., 687 F.3d 297, 307 (7th Cir. 2012) (internal quotation marks and citation omitted).

It is undisputed that Plaintiff engaged in protected activity when he filed an EEOC complaint and that he suffered an adverse employment action when he was terminated from his employment. But Defendant argues that Plaintiff fails to establish a causal connection between the two. Plaintiff argues that the following constitutes circumstantial evidence of a causal connection: (1) almost immediately after he filed his EEOC complaint regarding his delayed start date, Defendant cleared him for employment and gave him a start date; (2) Defendant sent Plaintiff through training alone, as opposed to in a group; (3) shortly after Plaintiff completed training, Defendant transferred Plaintiff from the "hex line," which had easier welds, to the

"boom and stick line," which had more difficult welds; and (4) Defendant did not give Plaintiff an adequate amount of time to improve his welds before firing him. Even if true, these facts do not establish the requisite causal connection.

With respect to the timing of his EEOC complaint and his ultimate start date, Plaintiff fails to explain how getting exactly what he wanted—a prompt start date—somehow related to his eventual termination. The law requires a connection between the protected activity and the adverse action. The timing between his EEOC complaint and his start date, therefore, is irrelevant.

Plaintiff also fails to explain how receiving personal training, as opposed to group training, is somehow evidence of discriminatory intent. Plaintiff presented no evidence to show that individual training was somehow unusual or outside of Defendant's normal practice. Similarly, Plaintiff presents no evidence to show that it was unusual for a new employee to be transferred from the "hex line" to the "boom and stick line" based on present need. Additionally, the undisputed facts show that, according to the collective bargaining agreement, Defendant was not required to give Plaintiff any particular length of time to perfect his welds as he was merely a probationary employee while he was in his first ninety days of employment. Lastly, Plaintiff fails to establish that Krueger, who made the decision to terminate him, was even aware of the EEOC complaint at the time of Plaintiff's termination. Accordingly, Plaintiff fails to establish a causal connection between his EEOC complaint and his termination. Therefore, his retaliation claim fails and Defendant is entitled to summary judgment.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: April 16, 2015